UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| ANTHONY G., | ) |
| Plaintiff, | ) ) ) |
| | ) No. 23-cv-13937 |
| v. | ) ) Magistrate Judge Keri L. Holleb Hotaling |
| LELAND DUDEK, Acting Commissioner of the Social Security Administration, | ) ) ) |
| Defendant. | ) ) |

**MEMORANDUM OPINION AND ORDER**

Plaintiff Anthony G.[1] for the second time now appeals the decision of the Defendant Acting Commissioner ("Commissioner") of the Social Security Administration ("SSA") denying him disability benefits. For the reasons set forth below, Plaintiff's motion for summary judgment (Dkt. 19) is DENIED, and the Commissioner's motion for summary judgment (Dkt. 22) is GRANTED.[2] The Commissioner's decision is affirmed. Civil case terminated.

**I.     BACKGROUND**

  **A.     Procedural History**

On February 27, 2018, Plaintiff, whose age qualifies him as a younger individual, *see* 20 C.F.R. §§ 404.1563(c), 416.963(c), filed applications for disability insurance benefits and supplemental security income alleging disability beginning on April 1, 2014. (Administrative Record ("R.") 229-37, 749-50.) Ultimately, an Administrative Law Judge ("ALJ") held an Administrative Hearing and later issued a February 21, 2020 decision finding Plaintiff not disabled

---

[1] In accordance with Northern District of Illinois Internal Operating Procedure 22, the Court refers to Plaintiff only by his first name and the first initial of his last name.

[2] Plaintiff filed a Memorandum in Support of Reversing or Remanding Commissioner's Decision (Dkt. 19), which the Court construes as a motion for summary judgment. Similarly, although the Commissioner's filing is styled as a "Response to Plaintiff's Motion for Summary Judgment," the Commissioner seeks the entry of summary judgment in the Commissioner's favor (Dkt. 22 at 14), so the Court also construes this filing as a motion for summary judgment.

(R. 10-23), which Plaintiff appealed. The Court remanded the case to the Commissioner for further proceedings, holding that the ALJ's bullet-pointed findings that Plaintiff had moderate limitations in the four "paragraph B" criteria relevant to assessing mental impairments provided "no indication which pieces of evidence the ALJ believe[d] supported which conclusion" and left the Court "to guess, for instance, why the ALJ believe[s] the evidence he cited supports a finding that Plaintiff had a moderate limitation in interacting with others." Case No. 20-cv-7686, Dkt. 25 at 4. (*See* R. 693-99, 702-06.) Plaintiff filed a subsequent claim for Title II benefits on May 18, 2022 (R. 747-48), which was consolidated with the remanded claim files. (R. 603, 704.)[3]

On consideration of the consolidated case files, the ALJ held a second Administrative Hearing and afterwards again denied Plaintiff's applications in a June 28, 2023 decision. Although the Court was unable to locate the Appeals Council's denial within the Administrative Record, Plaintiff represents without contradiction that the decision became final on or about August 29, 2023 (Dkt. 1 ¶ 8), rendering it reviewable by the district court under 42 U.S.C. § 405(g). Plaintiff filed this lawsuit challenging the ALJ's June 28, 2023 decision. (Dkt. 1.)

    **B.**    **The ALJ's Decision**

The ALJ analyzed Plaintiff's claim following the SSA's usual five-step sequential evaluation process to determine whether Plaintiff was disabled during the relevant period. (R. 603-20); *see also* 20 C.F.R. §§ 404.1520(a), 416.920(a). The ALJ found at step one that Plaintiff meets the insured status requirements of the Social Security Act through December 31, 2027 and did not engage in substantial gainful activity after his alleged April 1, 2014 disability onset date. (R. 606.) At step two, the ALJ identified severe impairments of generalized anxiety disorder and autism spectrum disorder. (*Id.*) The ALJ decided at step three that Plaintiff's impairments, alone or in

---

[3] The record also contains an application for supplemental security income dated May 13, 2020. (R. 739-46.)

combination, did not meet or medically equal one of the SSA's listings of impairments (a "Listing") under 20 C.F.R. 404, Subpart P, Appendix 1. (R. 606-13.) In making this determination, the ALJ evaluated Plaintiff's mental limitations and determined Plaintiff had moderate limitations in all four paragraph B criteria: understanding, remembering, or applying information; interacting with others; concentrating, persisting, or maintaining pace; and adapting or managing oneself. (R. 611-13.) The ALJ also found that the paragraph C criteria were not met. (R. 613.)

Before step four, the ALJ found Plaintiff retained the residual functional capacity ("RFC") to "work at all exertional levels with no restriction of his ability to lift and/or carry, sit, stand, or walk throughout an 8 hour workday" in a "non-hazardous environment" and could "understand, remember, and carry out simple instructions" and "make simple work-related decisions," with "occasional interactions with supervisors and coworkers" and no interactions with the general public, "tolerate end of the day quotas" without "specific production rate" requirements; and "deal with occasional changes in a routine work setting." (R. 613.) At steps four and five, the ALJ concluded Plaintiff had no past relevant work, and jobs exist in sufficient numbers in the national economy that Plaintiff can perform, given his age, high school education, work experience, and RFC. (R. 617-19.) The ALJ therefore found Plaintiff was not disabled. (R. 619.)

### D. Standard of Review

On review, the Court does not "merely rubber stamp the ALJ's decision." *Prill v. Kijakazi*, 23 F.4th 738, 746 (7th Cir. 2022). That said, "[t]he findings of the Commissioner [] as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g); *Prill*, 23 F.4th at 746. Substantial evidence is "more than a mere scintilla," and means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97, 103 (2019). The Court does "'not reweigh the evidence, resolve debatable evidentiary conflicts, determine credibility, or substitute [the Court's] judgment for the ALJ's determination so long as

3

substantial evidence supports it.'" *Warnell v. O'Malley*, 97 F.4th 1050, 1052-53 (7th Cir. 2024) (quoting *Gedatus v. Saul*, 994 F.3d 893, 900 (7th Cir. 2021)). ALJs "are subject to only the most minimal of articulation requirements." *Warnell*, 97 F.4th at 1053. If substantial evidence supports the determination, the Court must affirm even if "reasonable minds could differ." *Elder v. Astrue*, 529 F.3d 408, 413 (7th Cir. 2018) (citation and quotation marks omitted).

## II.  ANALYSIS

Plaintiff argues the ALJ: (1) failed to support his Step Three finding that Plaintiff's mental impairments do not meet or equal listing level severity; (2) failed to support his rejection of the opinion of the neuropsychological examiner and crafted an RFC that fails to account for Plaintiff's deficits within the context of full-time work; and (3) improperly undermined Plaintiff's subjective claims.

### A.  The ALJ's Step Three Findings Are Adequate

Plaintiff first challenges the ALJ's findings that he did not meet the paragraph B and paragraph C criteria; he believes he met or medically equaled those listings. (Dkt. 19 at 8-11.) Plaintiff bears "the burden of proving not only that h[is] impairments met a listing, but that h[is] impairments satisfied all of the criteria specified in the listing." *Young v. Astrue*, No. 1:12-CV-00317-MJD, 2013 WL 501752, at *6 (S.D. Ind. Feb. 8, 2013) (citations omitted).

Although "an ALJ must discuss the requisite listing by name and offer more than a perfunctory analysis of the listing[,]" *Barnette v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004)*; see also Minnick v. Colvin*, 775 F.3d 929, 935-36 (7th Cir. 2015) (remanding case for "perfunctory [listing] analysis"), the ALJ need not "articulate specific evidence" in finding that the listing is not met. Social Security Ruling ("SSR") 17-2p (Mar. 17, 2017). An ALJ's "statement that the individual's impairment(s) does not medically equal a listed impairment constitutes sufficient articulation" to support that conclusion; the ALJ may articulate the judicially reviewable rationale

4

for a step-three medical-equivalence finding later in the five-step process. *Kring v. O'Malley*, No. 3:23-CV-941-CCB, 2024 WL 3159150, at *3 (N.D. Ind. June 24, 2024) (citing SSR 17-2p; *Zellweger v. Saul*, 984 F.3d 1251, 1252 (7th Cir. 2021) (explaining that ALJ opinion should be read "holistically").

Plaintiff acknowledges the ALJ supplemented the bullet-pointed paragraph B analysis that was remanded by the Court on prior review, but Plaintiff insists the ALJ's revised analysis contained "cherry-picked" facts and "illogical inferences" and that the ALJ "compound[ed] his error" by concluding without support that the paragraph C criteria also were not met. (Dkt. 19 at 8, 11.) The Court disagrees.

### i. Paragraph B Criteria

Regarding the four paragraph B criteria, at least one extreme limitation or at least two marked limitations are required for listing equivalence. *See* 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.06(B), 12.10(B). Plaintiff faults the ALJ's analysis and asserts record evidence "strongly support[s] a finding of listing level equivalence." (Dkt. 19 at 9.) But, although the ALJ's analysis referenced Plaintiff's activities, that alone renders them neither illogical nor "cherry-picked" as Plaintiff labels them. As Plaintiff notes (Dkt. 19 at 9), the ALJ acknowledged Plaintiff's symptoms of a lack of focus and task completion, hygiene deficiencies, preference to drive with supervision, racing thoughts, and others, and recounted therapy and examination findings and notes. (*Id.*) Plaintiff assumes that the only conclusion from the foregoing symptoms would be more limitations than the ALJ assessed (*see* Dkt. 19 at 9 ("It is impossible to conceive of how the ALJ leapt from his lengthy factual narrative to his finding of no more than a moderate limitation in a single paragraph B functional area")), but the ALJ provided a logical bridge between the evidence and his findings. The ALJ, after all, contrasted the claimed effects of those symptoms with Plaintiff's abilities to pay bills; use a debit card; learn, understand, and apply information related to driving

(despite his choice to drive with others rather than alone) and take a driver's test with an examiner in the car; attend an anime convention and stay in a hotel; and understand and answer questions at the Administrative Hearing. The ALJ found those activities undermined Plaintiff's claims as to the severity of his symptoms. This is permissible. *See John P. v. O'Malley*, No. 23-cv-3456, 2024 WL 621615, at *4 (N.D. Ill. Feb. 14, 2024) (rejecting Plaintiff's attack on the ALJ's assessment of "his daily activities in relation to the paragraph B criteria" and finding no error where "the ALJ appropriately read into Plaintiff's activities that his alleged mental impairments were not as severe as alleged").

Pressing his point, Plaintiff insists that two other record inclusions require a contrary result: (1) a 2018 neuropsychological assessment in which the neuropsychologist opined that "Plaintiff's current presentation" indicated "he did not possess sufficient concentration, persistence, and speed to be a viable candidate for full-time employment" and would be distracted and distract others on the job; and (2) 2019 therapy notations that Plaintiff presented with generally poor hygiene and anxiety with a stutter, and his "responses indicated" moderate difficulty with occupational functioning, severe difficulty with academic functioning, moderate to severe difficulty with family functioning, and moderate to severe difficulty with social functioning. (*Id*. at 9-11.) Perhaps those would have *supported* a finding that Plaintiff was more than moderately limited in at least one of the Paragraph B criteria, but that does not carry Plaintiff's burden to show his symptoms were severe enough to qualify as "marked" in any particular two paragraph B criteria or "extreme" in one. And the ALJ grappled with that evidence and provided substantial evidence in support of his contrary conclusions, explaining that Plaintiff had undergone therapy since the 2018 neuropsychological assessment and gained coping mechanisms. The Court cannot return the evidence to the scale to reweigh it to reach the alternate conclusion Plaintiff seeks. *See Williams v. O'Malley*, No. 20-cv-50490, 2024 WL 4063913, at *3 (N.D. Ill. Sept. 5, 2024) (finding that,

because ALJ "discuss[ed] [] symptoms as well as the medical reports and testimony that Plaintiff cites" and, "after considering all the evidence, . . . determined [] Plaintiff's impairments did not satisfy the requirements of paragraph B," Plaintiff's argument amounted to mere "disagree[ment] with how the ALJ weighed the evidence or the conclusions the ALJ drew from the evidence").

        ii.        **Paragraph C Criteria**

Turning to the ALJ's Paragraph C criteria findings, the Court again finds the ALJ sufficiently supported his (albeit brief) analysis. To satisfy the Paragraph C criteria, the claimant must have a "serious and persistent mental disorder[]." 20 C.F.R. Pt. 404, Subpt. P, App. 1 §§ 12.06(C), 12.10(C). This requires: (1) "a medically documented history of the disorder over a period of at least 2 years"; and (2) "evidence of both" (a) "[m]edical treatment, mental health therapy, psychosocial support(s), or a highly structured setting(s) that is ongoing and [] diminishes the symptoms and signs of [the] mental disorder"; and (b) "[m]arginal adjustment, that is, [the claimant] ha[s] minimal capacity to adapt to changes in [] environment or to demands that are not already part of your daily life." *Id*. As Plaintiff emphasizes, the ALJ concluded that Plaintiff met the first paragraph C criterion of "a medically documented history of the disorder over a period of at least 2 years." (Dkt. 19 at 11; R. 613.) Plaintiff asserts that the ALJ insufficiently supported his next conclusion that Plaintiff did not meet the second paragraph C criterion. (Dkt. 19 at 11.)

Despite Plaintiff's contentions, whether read in isolation or holistically, the ALJ offered more than a "perfunctory analysis" of the paragraph C criteria. *See Denise F. v. O'Malley*, No. 18-cv-5195, 2024 WL 867070, at *11 (N.D. Ill. Feb. 29, 2024) ("[T]he Seventh Circuit has concluded that an ALJ's RFC analysis between Steps Three and Four may also be used to explain their conclusions at Step Three.") (citing *Jeske v. Saul*, 955 F.3d 583, 590 (7th Cir. 2020); *Zellweger*, 984 F.3d at 1255). Even within the paragraph C analysis, the ALJ explained that "counseling sessions had provided the claimant techniques that helped him control his response to stress and

7

anxiety" and therefore "failed to establish the presence of the paragraph-C criteria." (R. 613.) This brief explanation alone supports the ALJ's decision on the second criterion. Even if it were insufficient, the ALJ's thorough discussion of relevant evidence later in his opinion adequately bridges any gaps. The ALJ, after all, detailed Plaintiff's medical and therapy records, evaluations from psychiatric consultants, Plaintiff's work history, Plaintiff's testimony, and statements from Plaintiff's mother. (R. 607-11.) The ALJ documented Plaintiff's off-and-on therapy sessions between 2019 and 2021 and noted Plaintiff had declined a referral to another counselor when his counseling sessions ended. (R. 608-10, 611, 613-17.) This further supports the ALJ's paragraph C findings. *See Williams v. O'Malley*, No. 20-cv-50490, 2024 WL 4063913, at *3 (N.D. Ill. Sept. 5, 2024) (finding that, despite sparse paragraph C analysis, "the ALJ's later discussion of relevant evidence was sufficient to support his step three finding" where ALJ also had not overlooked contrary evidence); *Andrew B. v. O'Malley*, No. 1:22-CV-02149-TWP-MG, 2024 WL 1152225, at *3–4 (S.D. Ind. Mar. 18, 2024) ("[M]erely pointing this fact out—*i.e.*, that the ALJ forewent explicitly detailing [Plaintiff's] support in the 'meets or medical equals' section—does not convince the Court that the ALJ otherwise failed to appropriately consider his support needs as relevant evidence" where the ALJ otherwise provided sufficient reasoning for that decision).

Plaintiff disagrees, relying both on the fact he has never worked more than twelve hours per week and the aforementioned 2018 neuropsychological assessment and 2019 therapy notes, which indicated he would be "unable to function at work with his current deficits."[4] (Dkt. 19 at

---

[4] Plaintiff in fact overstates the opinions of Ms. Ann Rowan, Plaintiff's therapist for ten sessions in 2019, who observed "moderate" difficulty with occupational functioning and noted the "[b]arriers to [Plaintiff] obtaining different employment are anxiety, poor self-esteem, and reliance on others for transportation" and "[w]ork is [Plaintiff's] biggest stressor." (R. 528, 529, 531, 547.) As addressed below, Alexander Adam Eschbach, Ph.D., who conducted the neuropsychological assessment in this case, did opine in 2018 that Plaintiff then lacked the concentration, persistence, and speed and social skills for full-time employment, but Plaintiff sidesteps in this discussion Dr. Eschbach's immediate caveat that, with treatment, Plaintiff's "deficits may be diminished or fully eliminated." (R. 489-91, 497.) The ALJ found that Plaintiff had, through counseling, gained coping mechanisms—after Dr. Eschbach rendered his opinion. (R. 613, 617.)

8

11.) Plaintiff insists these facts show "marginal adjustment" under paragraph C. (*Id.*) The Court disagrees that such a conclusion is foregone. Even if Plaintiff were correct, though, again, that does not meet Plaintiff's burden to show his symptoms met paragraph C's *entire* second criterion, including having "medical treatment, mental health therapy, psychosocial support(s)" or an ongoing "highly structured setting" that "diminishes the symptoms and signs of" his disorders, *along with* marginal adjustment. *See Williams*, 2024 WL 4063913, at *4 (finding claimant did not show she met paragraph C listing where, although she presented evidence that regular medical treatment "somewhat diminished signs and symptoms of her medical disorders," she did not show "a minimal capacity to adapt to" environmental changes or demands not already part of her daily life); *Jason V. v. Kijakazi*, No. 20-cv-4992, 2023 WL 5289369, at *6 (N.D. Ill. Aug. 17, 2023) (declining to "reverse the ALJ's decision" where Plaintiff did "not show that he would otherwise meet the Paragraph C criteria" through arguing that "symptom[s] arose from changes in [his] environment or new demands"). The ALJ examined the relevant evidence and logically bridged his conclusions from that evidence. Even if reasonable minds could differ on the result, the Court cannot, as Plaintiff implicitly requests, revisit the weight the ALJ gave the evidence. *Elder*, 529 F.3d at 413.

      **B.**      **The ALJ's RFC Determination Was Supported by Substantial Evidence**

Plaintiff argues the ALJ's RFC analysis was flawed due to the ALJ's treatment of the August 12, 2018 opinion of Plaintiff's neuropsychological examiner, Dr. Eschbach, who opined that "it was unlikely that [Plaintiff] is able to sustain meaningful full-time employment *currently*" because he lacked "sufficient concentration, persistence, and speed" and Plaintiff's "social skills deficits" would lead to him both being distracted by others' behavior and interfering with others' work completion. (Dkt. 19 at 12 (citing R. 490-91, 489, 497 (emphasis in original)).) As Plaintiff notes (Dkt. 19 at 12), Dr. Eschbach further opined treatments like individualized therapy and

vocational training might "diminish[] or fully eliminate[]" Plaintiff's symptoms, such that he might be candidate for full-time employment. (R. 513.)

The ALJ may not "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)," 20 C.F.R. §§ 404.1520c(a), 416.920c(a), but must determine the persuasiveness of medical opinions by addressing at least the two most important regulatory factors, supportability (the objective medical evidence and explanation presented by the medical source) and consistency (how consistent the medical opinion is with evidence from other medical and nonmedical sources in the claim). *Id*. §§ 404.1520c(b)(2)-(c), 404.920c(b)(2)-(c).

As Plaintiff acknowledges, the ALJ evaluated Dr. Eschbach's opinion, emphasizing that the "evaluation was conducted about four-and-a-half years prior to the hearing," and that, "in that [intervening] time, [Plaintiff] had been able to follow up on some of Dr. Eschbach's recommendations." (R. 617.) The ALJ found Dr. Eschbach's opinions unsupported "by the complete record available" because claimant had gained "techniques to help with controlling his response to anxiety" and Plaintiff's primary care physician prescribed medications that aided Plaintiff with sleeping and further controlling his anxiety. (*Id*.) Although the ALJ did not use the word "consistency," his analysis indicates that he, in harmony with the regulations, compared the record evidence (spanning years after Dr. Eschbach's opinion was rendered) and Plaintiff's testimony, with Dr. Eschbach's opinions. (*Id*.)

Plaintiff next asserts that, despite "all [the] particularity" in the ALJ's RFC assessment, he nevertheless failed to account for "Plaintiff's deficits in functioning" within a work environment full-time. (*See* Dkt. 19 at 13-14.) While Plaintiff is generally correct that generic restrictions purportedly meant to accommodate moderate limitations in concentration, persistence, or pace "might not adequately capture a claimant's limitations," *see Jozefyk v. Berryhill*, 923 F.3d 492, 498 (7th Cir. 2019), the ALJ here attempted to accommodate Plaintiff's particular limitations by

10

ensuring Plaintiff would not have production quotas and would be restricted to work with simple instructions or decisions and occasional interactions with supervisors or coworkers. (*See* R. 613, 616; *see also* R. 279 (third-party statement describing Plaintiff's difficulty with "learning more complex jobs")). Such tailoring of the RFC is sufficient. *See, e.g., Spring W. v. Saul*, No. 20-cv-1864, 2021 WL 2529615, at *5 (N.D. Ill. June 21, 2021) (holding that, rather than "simply employ terms like 'simple, repetitive tasks,' without any further specification," ALJ had "accommodated [claimant's] issues with concentration, stress, and engaging with others by reducing her work to simple, routine, and repetitive tasks in a low-stress environment, with few work-related decisions, and no interaction with the public and only superficial interaction with coworkers"). In any event, any error is rendered harmless by Plaintiff's failure to point to record evidence indicating specific restrictions in his capabilities the ALJ did not address and resolve. *Jozefyk*, 923 F.3d at 498. Again, in essence, Plaintiff seeks an impermissible reweighing of evidence. *See Gedatus*, 994 F.3d at 900 (noting that claimant's "colorable arguments" regarding some "evidence [that] could be considered favorable to [claimant]" were unavailing where ALJ did not ignore contrary evidence and drew assessed evidence differently than claimant desired).

### C. The ALJ's Subjective Symptoms Analysis Was Sufficient

Plaintiff argues the ALJ's subjective symptoms analysis was sub-par. Plaintiff begins by faulting the ALJ's allegedly "mocking" quip during the Administrative Hearing that Plaintiff's falling out with a friend over the Star Wars movies was a "disagree[ment] on something important rather than something like politics or religion[.]" (Dkt. 14.) Plaintiff insists this indicates the ALJ found Plaintiff "more shallow than disabled," but the ALJ made no further reference to that conversation, and the Court discerns no indication it had the import Plaintiff assigns to it.

Plaintiff next insists that the ALJ overemphasized the importance of Plaintiff's ongoing three-year part-time work as a grocery bagger and his "basic activities of daily living" in finding

11

that he could work full-time. But the ALJ did not improperly equate Plaintiff's daily activities with an ability to work a full-time job, *see Tutwiler v. Kijakazi*, 87 F.4th 853, 858-59 (7th Cir. 2023); SSR 16-3p, 2017 WL 5180304, at *5, 7-8; *Green v. Saul*, 781 F. App'x. 522, 526 (7th Cir. 2019); instead, the ALJ properly focused upon inconsistencies with Plaintiff's allegedly disabling symptoms when compared to Plaintiff's activities. The ALJ recounted Plaintiff's own reports of his symptoms and treatments, including issues with hygiene and remembering to do household chores, his stutter, and his anxiety stemming from family episodes and workplace stressors and distractions, weighing those against Plaintiff's part-time employment bagging groceries that included interactions with the public and coworkers, doing chores like laundry and taking out garbage, driving, bicycling to work, focusing "pretty well" while playing video games with online friends, and his travel and hotel stay for a hobby convention. (R. 612, 614-15.) The ALJ also noted Plaintiff's self-reports of symptom improvement through therapy and use of calming techniques, as well as with medications prescribed by his primary care physician. (R. 614, 617.) The ALJ's analysis connected the evidence to his conclusion. *See Warnell*, 97 F.4th at 1054 (finding ALJ's explanation "more than sufficient" where ALJ "devoted considerable space to addressing the persuasiveness of [claimant's] experts[,]" "highlighted specific evidence that contradicted her conclusions," and "acknowledged and grappled with conflicting evidence, ultimately concluding that the treatment record as a whole supports a finding of non-disability").

      Plaintiff finally attacks the ALJ's consideration of his mother's third-party statements regarding Plaintiff's symptoms "while assess[ing] the RFC" (R. 616; R. 279, 286), because, in Plaintiff's view, "it would have been more appropriate to consider [her statements] pursuant to SSR 16-3p" in the subjective symptoms analysis. (Dkt. 19 at 15.) But this is the type of "putting the ALJ's written discussion under a microscope and then flyspecking it" the Seventh Circuit recently criticized, stating, "[t]he better course is to stick to our precedent, which is all about

12

substance and not form." *Warnell*, 97 F.4th at 1053. The Court discerns no error, given the ALJ's opinion indicates he did consider (and even accept the contents of, to a degree) the Plaintiff's mother's third-party statement.

### III. CONCLUSION

For the foregoing reasons, Plaintiff's motion for summary judgment (Dkt. 19) is denied, and the Commissioner's motion (Dkt. 22) is granted. The decision of the Commissioner is affirmed.

ENTERED: March 4, 2025

_____
Hon. Keri L. Holleb Hotaling
United States Magistrate Judge